[No. 14437.   Department Two.   January 12, 1918.]

THE STATE OF WASHINGTON, *Respondent*, v. LOGAN
BILLINGSLEY, *Appellant*.[1]

CRIMINAL LAW—EVIDENCE—ADMISSIBILITY—HEARSAY. In a prose-
cution for the possession of intoxicating liquors with intent to un-
lawfully dispose of the same, it is not inadmissible as hearsay for
the agent of a wholesale drug company to testify that the accused
bought liquor on behalf of a retail drug store, on orders signed by
him declaring an intent to use for lawful purposes, where all other
sales made to him in like manner were identified by other sales-
men, making the testimony of all the sales complete.

INTOXICATING LIQUORS — OFFENSES — UNLAWFUL POSSESSION—EVI-
DENCE—ADMISSIBILITY. In a prosecution for possession of intoxicat-
ing liquors with intent to unlawfully dispose of the same, the "cer-
tificate" issued by the state board of pharmacy to a drug store show-
ing. compliance with the law but not showing ownership, is not ad-
missible under Rem. Code, § 8464, making the "declaration" of
ownership filed with the secretary of the board presumptive evi-
dence of the ownership of the store or business mentioned therein.

SAME. In a prosecution for unlawful possession of intoxicating
liquors at a drug store, it is admissible to show accused's connec-
tion with the surreptitious possession of the intoxicating liquors
seized the same day at a warehouse where liquors were stored with
paraphernalia for its bottling, concocting and adulteration for un-
lawful disposition, the exact place being immaterial except as a
detail in showing the crime charged.

SAME. In such a prosecution, cross-examination to show the
ownership of the store in which accused kept the liquor is improper
and immaterial, and the same is true of cross-examination as to
whether witness ever "heard" of sales being made from the store.

SAME—UNLAWFUL POSSESSION—INSTRUCTIONS. In a prosecution
for the unlawful possession of intoxicating liquors by a drug store,
under Rem. Code, § 6262-7, granting the privilege to registered drug-
gists to sell liquor on the prescription of physicians, it is favorable
to give the jury the statutory definition of a registered druggist
under Id., § 8457, where the accused failed to prove that he was a
registered druggist.

SAME. In a prosecution for the unlawful possession of intoxi-
cating liquors at a drug store, in which the accused was not charged
as the keeper of the place, it is proper to refuse to instruct the jury

[1]Reported in 169 Pac. 845.

that they must find that he was the keeper of the place and not a mere employee.

SAME—UNLAWFUL POSSESSION—EVIDENCE—ADMISSIBILITY. In a prosecution for the possession of intoxicating liquors at a drug store with intent to unlawfully dispose of the same, the great quantity of liquors purchased by the accused and surreptitiously concealed and arranged therein is admissible to prove his intent in the possession of the liquor.

Appeal from a judgment of the superior court for King county, Jurey, J., entered September 23, 1916, upon a trial and conviction of keeping intoxicating liquors for unlawful sale. Affirmed.

*Walter B. Allen* and *Bell & Hodge,* for appellant.

*Alfred H. Lundin* and *Frank P. Helsell,* for respondent.

HOLCOMB, J.—Tried separately from his codefendant, appellant was found guilty upon an information charging him and another with unlawfully keeping intoxicating liquors, consisting of alcohol, cologne spirits, and other intoxicating liquors, in their possession in a building at 1525 Third avenue, Seattle, on July 24, 1916, with intent unlawfully to sell, barter, exchange, furnish, and otherwise unlawfully dispose of same.

At the close of the state's case, appellant unsuccessfully moved for a directed verdict of not guilty, upon the ground that the evidence was not sufficient to prove the charge. Upon the denial of the motion, appellant offered no evidence except a certificate showing the registration of the ownership of the Night & Day Drug Store, at 1525 Third avenue, with the state board of pharmacy, which certificate was rejected. There was evidence by one Max Harrison to the effect, that he was the city sales manager for Stewart & Holmes Drug Company, a wholesale drug company in Seattle; that his house had sold Logan Billingsley grain alcohol and cologne spirits; that cologne spirits is a higher grade of grain alcohol with a better odor; that the company sold the alcohol to Billingsley as the Night & Day Drug Store;

that, in his dealings with the Night & Day Drug Store, the witness always dealt with Logan Billingsley, who told him that his name was Fred Billingsley; that the drug company, between May 17, and July 21, 1916, sold to the Night & Day Drug Store 1,409 gallons of grain alcohol at about $3.05 per gallon; that, when Billingsley bought alcohol from the drug company, he, or someone from the store, had to sign a declaration that the purchase of the alcohol was for mechanical or chemical purposes. Appellant moved that all of the testimony of Harrison, except as to the sale of two barrels of alcohol on July 21, should be stricken from the consideration of the jury because, first, it was not shown that appellant was connected with the Night & Day Drug Store; and second, the testimony was hearsay.

The testimony of Harrison was that he never dealt with anybody but Logan Billingsley in dealing with the Night & Day Drug Store. The testimony of other clerks of the Stewart & Holmes Drug Company in evidence shows that Logan Billingsley signed the written orders for the alcohol: "Night & Day Drug Store, by Fred Billingsley," showing that Logan Billingsley pretended to all of the clerks of the wholesale drug house that he was Fred Billingsley. He did the ordering and called for the alcohol in his Ford delivery car at the store of Stewart & Holmes.

The testimony of Harrison was not hearsay. It may not have been of the greatest weight in all respects as to all of the sales, but its weight was for the jury. He testified as to a general course of dealing with the Billingsleys. He had charge of the sales of the Stewart & Holmes wholesale company. He dealt with Logan Billingsley. He received one check from him. He identified a record of all of the sales of alcohol made by the company to him. Several of the declarations of the purpose of the purchases of alcohol were signed by Logan Billingsley before him. He identified but two of them, each for one barrel of alcohol, signed by Logan Billingsley personally in his presence. All the other sales

of the alcohol by the wholesale house were completely followed and identified by other salesmen of the company. This made the testimony as to all the sales complete in its chain, even conceding that part of the testimony of Harrison was incompetent, which we do not. There was thus no error in refusing to strike the testimony of Harrison.

It is next contended that the court erred in refusing to admit the certificate of registration showing that the Night & Day Drug Store was registered in accordance with the requirements of the pharmacy act. This certificate was one issued by the state board of pharmacy under the provisions of Rem. Code, § 8464, which provides that the owner of each and every drug store, pharmacy or dispensary, shall file with the secretary of the state board of pharmacy, a declaration of ownership and location, and shall then receive from the board a duly signed certificate of registration of the ownership and location, which *declaration of ownership* and location, so filed as aforesaid, shall be deemed presumptive evidence of the ownership of the pharmacy, drug store or business mentioned herein.

The purpose of this provision of the statute is to inform the public who is the responsible head of the drug store, and the *declaration* filed with the state board, and not the certificate issued, is presumptive evidence of ownership of the pharmacy. Appellant did not offer the declaration or a certified copy thereof, but offered merely the certificate. The certificate simply showed that the Night & Day Drug Store had complied with the provision of the statute with reference to filing proof of ownership of the Night & Day Drug Store. The ownership of the Night & Day Drug Store was not an element of the offense in this prosecution. Appellant was simply charged with keeping intoxicating liquor for an unlawful purpose; not with the keeping of a place or location for an unlawful purpose.

The next claim of error is upon admission by the court of evidence relating to the Westlake avenue warehouse prop-

erty found there.   The evidence is that, on the same day as the search at 1525 Third avenue, a warehouse at 2128 Westlake avenue was searched.   There secret receptacles were dis-covered for the hiding of intoxicating liquor, and a barrel of alcohol and a large supply of apparatus, consisting of empty caramel cans from Stewart & Holmes, paraphernalia for bottling goods, a machine for sealing bottles, large quantities of whiskey labels, and a rubber hose were found.   A witness testified that he had been at the warehouse on the day before and found a truck there with thirteen five-gallon cans of whiskey in care of two men.   He arrested the two men, and in a few minutes appellant came in and asked him why he should come there without a search warrant, and said that if he—appellant—had come down sooner, he could have claimed the whiskey and the witness could have sent him instead of the two men.

Appellant claims that this evidence tends to show the commission of another crime than that charged, and prejudiced appellant before the jury.   The evident purpose of the introduction of this evidence was to show the surreptitious purposes of appellant in conducting one place at 1525 Third avenue for the retail business of selling intoxicating liquors unlawfully, and, in connection therewith, another place where liquors could be stored, bottled, and apparently concocted and adulterated for disposition.   It must be borne in mind that appellant was charged with keeping intoxicating liquor for unlawful sale; not with the sale of intoxicating liquor unlawfully, and not for keeping an unlawful place.   The evidence of the dispositions and arrangements at the warehouse and the character of liquor and appliances found there all tends to show the guilty intent of appellant in the disposition of the liquor possessed by him at 1525 Third avenue, or anywhere else.   The exact place where the liquor was possessed unlawfully was immaterial except as a detail in showing the crime charged.   The evidence as to the possession of

the liquor at the warehouse was, therefore, competent and material, and did not tend to prove any other or additional crime.

It is contended that the court erred in refusing to permit appellant, in cross-examination of a witness, to show that he found evidence on the premises at 1525 Third avenue showing the owner thereof and the keeper of the contents thereof to be a person other than appellant. This had reference to the attempted cross-examination of a witness for the state in regard to his noticing, when the premises at 1525 Third avenue were searched, a certificate of registration of ownership by the state board of pharmacy, heretofore referred to, posted up somewhere on the premises. This attempted cross-examination was improper and immaterial, and had nothing to do with the charge of possession of the liquor unlawfully by the appellant.

Another contention is that the court erred in refusing to permit cross-examination of a state's witness to show that no sales of liquor had been made at 1525 Third avenue. This attempted cross-examination was simply to ask the witness whether he had ever *heard* of any sales being made out of that location. It would certainly be improper and immaterial for the witness to answer whether he had ever *heard* of any sales of liquor being made at that location, and tended to show nothing.

It is contended that the court erred in instructing the jury as follows:

"A registered druggist is a druggist who either is himself a registered pharmacist or has a registered pharmacist in charge of his drug store."

Section 8457, Rem. Code, provides that:

"Every place in which physicians' prescriptions are compounded shall be deemed to be a pharmacy, or a drug store, and the same shall be under the personal supervision of a licensed pharmacist."

The court, in the instruction, very closely followed this statutory definition of a licensed pharmacy or drug store; and, although the defendant offered no evidence that he was a licensed druggist or a pharmacist and entitled to protection as such, the court gave him the benefit of that provision of the statute and instructed as stated. The prohibition law, Laws of 1915, page 4, § 7 (Rem. Code, § 6262-7), grants the privilege to a registered druggist or pharmacist to sell intoxicating liquors on the prescription of physicians. But the prohibition law certainly intended that the druggists or pharmacists who were entitled to sell intoxicating liquors on the prescription of physicians should be registered and licensed druggists or pharmacists. There was no attempt in this case to show that appellant was a licensed druggist or pharmacist, or that he had in charge of the place, under his control, any person who was a licensed druggist or pharmacist. The definition given by the court was correct, but was, if anything, unduly favorable to appellant.

Appellant claims five errors of the court in the refusal of the court to instruct as requested by certain instructions offered by appellant. These contentions are not argued by appellant, and we find 'no merit in any of the claims of error and none worthy of discussion, except possibly the eighth assignment of error. In that instruction the appellant requested the court to instruct the jury that, before they could find the defendant guilty of the charge, they must find beyond a reasonable doubt that he was the "keeper" of the place and not a mere employee therein. This was not a proper instruction for reasons heretofore intimated. Appellant was not charged as the keeper of an unlawful place, but as the keeper of a thing for unlawful purposes.

Upon the general proposition that the court erred in denying appellant's motion for a directed verdict, we are convinced that the evidence was amply sufficient to justify the verdict. In a similar prosecution in Oklahoma against a defendant of the same name and possibly of the same iden-

tity, *Logan Billingsley v. State*, 4 Okl. Cr. 597, 113 Pac. 241, it was said that, as to the accused's intent to sell liquor, the quantity in possession was a question to be considered in determining that question. And so here, the very great quantity of intoxicating liquor purchased by appellant, and surreptitiously concealed and arranged as shown, is a strong circumstance to be considered to prove his intent in the possession of the liquor. All the facts and circumstances tended to prove his guilt. Without discussing the evidence in detail, it suffices to say that it was amply sufficient and not contradicted.

Judgment affirmed.

ELLIS, C. J., MOUNT, MORRIS, and CHADWICK, JJ., concur.